UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

PENNY TAINTER,

          Plaintiff,

    v.

KILOLO KIJAKAZI, acting
Commissioner of Social Security,

          Defendant.

No. 1:20-cv-01770-GSA

**ORDER DIRECTING ENTRY OF
JUDGMENT IN FAVOR OF PLAINTIFF
AND AGAINST DEFENDANT
COMMISSIONER OF SOCIAL SECURITY**

**(Doc. 21, 23)**

## I.    Introduction

Plaintiff Penny Tainter ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for supplemental security income pursuant to Title XVI of the Social Security Act. The matter is before the Court on the parties' briefs which were submitted without oral argument to the United States Magistrate Judge.[1] Docs. 21, 23, 25. After reviewing the record the Court finds that substantial evidence and applicable law do not support the ALJ's decision.

## II.    Factual and Procedural Background[2]

On February 26, 2018 Plaintiff applied for supplemental security income. The Commissioner denied the application initially on September 6, 2018 and on reconsideration on December 3, 2018. Plaintiff requested a hearing which was held before an Administrative Law Judge (the "ALJ") on July 1, 2020. AR 65–94. On July 14, 2020 the ALJ issued an unfavorable

---

[1] The parties consented to the jurisdiction of a United States Magistrate Judge. *See* Docs. 7 and 11.

[2] The Court has reviewed the relevant portions of the administrative record including the medical, opinion and testimonial evidence about which the parties are well informed, which will not be exhaustively summarized. Relevant portions will be referenced in the course of the analysis below when relevant to the parties' arguments.

decision.  AR 16–34.  The Appeals Council denied review on October 26, 2020.  AR 1–6.  On December 15, 2020, Plaintiff filed a complaint in this Court.  Doc. 1.

### III.     The Disability Standard

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits.    "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole."  *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted).  Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a scintilla, but less than a preponderance.  *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted).      When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence."  *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and quotations omitted).  If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision.  *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted).  "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months.   42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. 20 C.F.R. § 416.920(a)-(f). While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given her RFC, age, education and work experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

## IV.   The ALJ's Decision

At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity since her application date of February 26, 2018. AR 22. At step two the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease; depression; bipolar disorder; and, multiple sclerosis. AR 22. The ALJ also found at step two that Plaintiff had the non-severe impairment of right wrist ganglion cyst. AR 22. At step three the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 22–23.

Prior to step four the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. 416.967(b) with the following restrictions: frequent postural activities; routine, repetitive tasks with simple decision making; minimal to no direct contact with the public. AR 24.

At step four the ALJ concluded that Plaintiff could not perform her past relevant work as a

tractor trailer truck driver.  AR 27.  At step five, in reliance on the VE's testimony, the ALJ concluded that Plaintiff could perform other jobs existing in significant numbers in the national economy: small product assembler; housekeeping cleaner; and laundry worker.  AR 28.  Accordingly, the ALJ concluded that Plaintiff was not disabled at any time since her application date of February 26, 2018.  AR 28.

## V.   Issues Presented

Plaintiff asserts three claims of error: 1) that the ALJ failed to properly weigh the state agency physicians' medical opinions; 2) that the ALJ failed to identify and reconcile an apparent conflict between the DOT and the VE's testimony; 3) that the ALJ improperly rejected her testimony.

### A.   The State Agency Medical Opinions

#### 1.   Applicable Law

Before proceeding to step four, the ALJ must first determine the claimant's residual functional capacity.  *Nowden v. Berryhill*, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018).  The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The RFC must consider all of the claimant's impairments, including those that are not severe.  20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96–8p.

A determination of residual functional capacity is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner.  *See* 20 C.F.R. §§ 404.1527(d)(2) (RFC is not a medical opinion), 404.1546(c) (identifying the ALJ as responsible for determining RFC).  "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity."  *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001).  In doing so, the ALJ must determine credibility, resolve conflicts in medical testimony and resolve evidentiary ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995).

"In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins,* 466 F.3d at 883. *See also* 20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other evidence). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)). The RFC need not mirror a particular opinion; it is an assessment formulated by the ALJ based on all relevant evidence. *See* 20 C.F.R. §§ 404.1545(a)(3).

For applications filed on or after March 27, 2017, the new regulations eliminate a hierarchy of medical opinions, and provide that "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a). Rather, when evaluating any medical opinion, the regulations provide that the ALJ will consider the factors of supportability, consistency, treatment relationship, specialization, and other factors. 20 C.F.R. § 404.1520c(c). Supportability and consistency are the two most important factors and the agency will articulate how the factors of supportability and consistency are considered. *Id.*

On April 22, 2022, the Ninth Circuit addressed whether the specific and legitimate reasoning standard is consistent with the revised regulations, and clarified what explanatory obligations still remain:

> The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant. See 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling

weight, to any medical opinion(s) ..., including those from your medical sources."). Our requirement that ALJs provide "specific and legitimate reasons" for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions, see Murray, 722 F.2d at 501–02, is likewise incompatible with the revised regulations. Insisting that ALJs provide a more robust explanation when discrediting evidence from certain sources necessarily favors the evidence from those sources—contrary to the revised regulations.

. . .

Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. The agency must "articulate ... how persuasive" it finds "all of the medical opinions" from each doctor or other source, 20 C.F.R. § 404.1520c(b), and "explain how [it] considered the supportability and consistency factors" in reaching these findings, id. § 404.1520c(b)(2).

*Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

## 2.    Analysis

The state agency disability determination service Drs. Caruso-Radin, Bradley, Khong, and Frye reviewed Plaintiff's health history at the initial and reconsideration levels.  Drs. Khong and Frye reviewed Plaintiff's physical health history and opined in relevant part that Plaintiff could perform light exertional work with frequent postural activities.  AR 144; 162–63.  Drs. Caruso-Radin and Bradley reviewed Plaintiff's mental health history and opined in relevant part that Plaintiff "can understand, remember, apply knowledge and carry out a 2-step command involving simple instructions."  AR146; 164.  Both parties agree that the ALJ failed to discuss these opinions to any extent, but the parties disagree as to whether that error was harmful.

### a.    Physical RFC

As to Plaintiff's physical RFC, the parties agree that the ALJ essentially adopted the opinions of Drs. Khong and Frye in all pertinent respects.  Plaintiff contends the error was nevertheless harmful because the ALJ may not simply adopt an opinion without comment whether or not it is consistent with the record.  Reply at 2, Doc. 25.  Plaintiff contends the ALJ was required to discuss the consistency of those opinions with the record, "particularly in light of the evidence of escalating symptoms and treatment submitted subsequent to [the state agency

doctors'] assessments."  Br. at 13.

According to Plaintiff, this "escalating symptoms and treatment" included: 1) Plaintiff reported in November 2018 she could walk only half a block and sit for 30 minutes due to pain (AR 733); 2) a December 2018 lumbar spine MRI showed stenosis contacting the left exiting nerve root at L4-5 and S1 (AR 740); 3) an April 2019 report to pain management physician that she was using a walker and had radicular pain in upper and lower extremities worsened with postural activities, walking, sitting and standing (AR 745); 4) a cervical spine MRI showed severe stenosis and spinal cord indentation (AR 1042–43); and 5) an escalating pain management care, medications, and injections due to persistent radicular pain, gait disturbance, and weakness (AR 1010–17; 1025–28; 1033–34; 1039).  Br. at 13.

Although Plaintiff's first claim is couched in terms of the ALJ's failure to properly weigh the opinion evidence, the alleged manifestation of that failure is that the records post-dating the agency physician's review revealed escalation of the impairments which warranted escalating limitations.  Thus, Plaintiff simply contends the RFC is not supported by substantial evidence.

With respect to her cervical spine impairment, the records do not substantiate Plaintiff's description regarding escalation of her condition, symptoms, or treatment.  Plaintiff cites an updated cervical spine MRI dated May 1, 2019, which did post-date the agency physicians' review.  As compared to the June 2017 MRI report, the May 1, 2019 MRI report does have some subtle distinguishing   language (such as spinal cord indentation) suggesting potential worsening of the impairment, but the radiologist plainly stated that the results were not materially different from the prior MRI.  The very first sentence under "impression," states as follows: "1. Stable MRI scan of the cervical spine, no interval change since previous study dated 6/2/2017."  AR 1043.

Plaintiff also cites evidence of purported escalating cervical spine pain management such

as medication and injections throughout 2019 and 2020 at Central California Pain Management. AR 1010–17; 1025–28; 1033–34; 1039. Granted this exhibit (Exhibit 19F) not only post dated the agency physicians' review, but it appears it was not cited or discussed by the ALJ. Nevertheless, as Plaintiff's own summary of the medical evidence reveals, her cervical spine impairment had been previously treated with pain medication and epidural steroid injections throughout 2018, records which were reviewed by the agency physicians. AR 438–445. Plaintiff does not explain what was novel about the pain management records from 2019 to 2020 such that it documented escalating treatment and warranted any escalating limitations beyond what the agency physicians and the ALJ included in the RFC.

With respect to her lumbar spine, records pre-dating the agency physicians' review consisted of: 1) a September 2017 examination for neck and back pain noting some tenderness to palpation of her lumbar spine and moderate pain with range of motion (AR 25 (citing Ex. C4F/8, AR 483); and, 2) a June 2018 emergency room visit due to walking difficulties (diagnosed as an MS flare up) at which only slight lumbar spine tenderness was noted but with intact strength and sensation. AR 25 (citing C7F/1-3; AR 608-610).

Thereafter, Plaintiff was evaluated on December 10, 2018 for severe low back pain level 9/10 radiating to her groin and lower extremities. AR 733. She stated the pain started 4 years earlier and she denied any recent injury or other inciting event. *Id.* The provider noted a pre-existing 2016 lumbar spine MRI showed mild degenerative disc disease with moderately sized disc extrusion at L5-S1, but no significant stenosis. *Id.* She had a normal gait, no muscle spasm, full muscle strength, intact sensation, but restricted lumbar range of motion, hyper-reflexive knee jerk, and positive straight leg raise. AR 734. An updated lumbar MRI was performed on December 19, 2018 which showed, among other things, moderate to severe right sided foraminal stenosis at L5-S1. AR 740.

Although the 2016 MRI does not appear to be in the record, the physician described it as showing only mild degenerative changes, as did the ALJ who issued the unfavorable decision for Plaintiff's prior disability application in 2017.   AR 123.   The description of only mild degenerative changes in the 2016 MRI contrasts with the December 2018 MRI showing moderate to severe right sided foraminal stenosis at L5-S1, which suggests potential worsening of the impairment.   Moreover, her report of severe radiating pain level 9 out of 10 contrasts with the more benign presentation at 2017 examinations noting only slight tenderness to palpation with moderately painful range of motion.  *See* 483; 608-610.

Concerning however, it does not appear that her lumbar spine impairment was given much consideration as the agency physicians' references to degenerative disc disease all appear to refer to "c/s" (cervical spine) with no discussion of the lumbar spine or the 2016 MRI which did substantially pre-date their review.  The potential progression of the lumbar spine impairment was not discussed by the ALJ who did discuss the December 2018 MRI results in isolation.  It's not clear if the ALJ even found Plaintiff had a severe lumbar spine impairment, as the ALJ found Plaintiff had "degenerative disc disease" without specifying cervical spine, lumbar spine, or both. Further, the sole basis the ALJ identified for concluding the *Chavez*[3] presumption of continuing non-disability did not apply was the fact that Plaintiff had been diagnosed with multiple sclerosis in the interim (an issue not discussed by either party), not a worsening of her cervical or lumbar spine impairments.

Nevertheless, even assuming Plaintiff did experience an exacerbation of her lumbar spine symptoms resulting in her December 10, 2018 follow up appointment and updated MRI, the December 2018 examination noted a normal gait, no muscle spasm, full muscle strength, and intact sensation.   AR 734.   There were some abnormalities noted including restricted lumbar

---

[3] *Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1988))

range of motion, hyper-reflexive knee jerk, and positive straight leg raise, which do suggest some limitations but not any limitations beyond light exertional work with postural restrictions as described in the RFC.  AR 734.  Plaintiff also cites April 2019 pain management records which noted her subjective report of gait disturbances and use of a walker as an assistive device (AR 745), but she cites no commensurate examination findings suggesting an objective need for an assistive device.  Further, despite her extreme reports of pain at these visits at a level 9 out of 10, the hearing testimony reflects that her pain level was reduced to a 3 or 4 out of 10 with medication use.[4]  AR 83.  This undermines Plaintiff's assertion that her symptoms escalated to a disabling extent after the agency level review such that the ALJ ought to have included additional restrictions in the RFC.

In sum, the ALJ did not commit harmful err in failing to discuss the state agency physicians' medical opinions concerning her physical RFC, opinions which the ALJ adopted.  "If the RFC assessment *conflicts* with an opinion from a medical source, the adjudicator must explain why the opinion was *not* adopted."  SSR 96-8p (emphasis added).  However, the inverse is not necessarily true.  There is no controlling authority stating in so many words that the ALJ's adoption of a medical opinion without comment is, in and of itself,  harmful error.

If the record as a whole supports stricter limitations than the medical opinions identify that is an issue unto itself to be addressed and supported directly; it is not an issue derivative of, or significantly related to, the ALJ's weighing of opinion evidence.  Plaintiff does not substantiate her assertion that the record documented escalating physical symptoms and treatment following the agency physicians' review such that the ALJ ought to have included more stringent restrictions in the RFC.

---

[4] As plaintiff emphasizes, she also testified that her pain medication (hydrocodone) made her drowsy, but Plaintiff does not expand further on this nor assert that the ALJ erred in omitting a corresponding RFC restriction.

b.      **Mental RFC**

As to Plaintiff's mental RFC, the ALJ did not discuss the opinions of Drs. Caruso-Radin and Bradley including their opinion that she "can understand, remember, apply knowledge and carry out a 2-step command involving simple instructions."   Br. at 12, Doc. 21.   Plaintiff emphasizes that the Ninth Circuit has determined "there is an apparent conflict between a claimant's limitation to one and two step tasks and a job requiring reasoning exceeding Level 1." *Id* (quoting *Morrison v. Berryhill,* No. 1:17-CV-00632- JLT, 2018 WL 4521208, at *6 (E.D. Cal. Sept. 20, 2018) (citing *Rounds v. Comm'r Soc. Sec. Admin.,* 807 F.3d 996, 1003 (9th Cir. 2015)).

Plaintiff contends the error was harmful because two of the jobs identified by the VE at step five had a reasoning level of R2, demanding that the employee at least be able to carry out detailed written or oral instructions.   *See* DOT # 706.684-022 (small product assembler); DOT # 589.685-038 (laundry worker).   Thus, Plaintiff contends that had the ALJ adopted the 2-step task limitation, those R2 jobs would have been precluded.

Despite the Ninth Circuit's holding in *Rounds*, courts have reached different conclusions about whether a limitation relating to 2-step tasks precludes jobs with a reasoning level of R2. Where an opinion separately states that a claimant can perform 1 to 2-step tasks *and* simple/routine tasks, some courts have suggested it is improper to conclude that the claimant can *only* perform 1 to 2-step tasks,  but that the two statements ought to be read cumulatively and it is appropriate for the RFC to only reflect the limitation to simple/routine tasks consistent with the regulatory principle that the RFC represents *most* one can do dispute one's limitations, not the least one can do. *See, e.g.  Nyberg v. Comm'r of Soc. Sec.*, No. 2:20-CV-0338-DMC, 2021 WL 1295378, at *6 (E.D. Cal. Apr. 7, 2021). ("It is clear that Dr. Colsky opined that the *most* Plaintiff can do is simple repetitive work, which is precisely the residual functional capacity described by the ALJ. Because the ALJ accounted for Dr. Colsky's opinion as to the most Plaintiff can do, the

Court finds no error in the ALJ's analysis.") (emphasis added); *but see Steven J. P. v. Saul*, No. CV 19-4330-PLA, 2020 WL 208808, at *5 (C.D. Cal. Jan. 14, 2020) (finding reversible error where the ALJ purported to give great weight to the opinion of a doctor who opined the claimant was limited to "shorter simpler 1-2 step instructions," but where the ALJ replaced that limitation with "simple, routine tasks" and did so without comment).

Here, the limitation in question as stated by Drs. Caruso-Radin and Bradley was that Plaintiff can "understand, remember, apply knowledge and carry out a 2-step command involving simple instructions." AR 145, 164.[5] Their phraseology does not suggest they were setting forth two distinct limitations. Rather, it suggests that "2-step command" is the operative limitation and that "simple" is an adjective which further modifies the 2-step command.[6]

The ALJ did express an intention to adopt the opinion of the consultative examiner, Dr. Martinez, that Plaintiff could carry out "one or two step job instructions," which the ALJ stated was persuasive and consistent with the state agency consultants. AR 27. The RFC, however, does not reflect that limitation verbatim but states, "routine, repetitive task and simple decision making." In contrast to the above-cited cases, the Commissioner in this case did not attempt to argue that the ALJ appropriately translated the 2-step command limitation. As such, there is no basis to distinguish the facts from the Ninth Circuit's opinion in *Rounds* which holds that a limitation to 1 to 2-step tasks is inconsistent with the mental demands of jobs that have a reasoning level of R2. Rather, Defendant rests the argument solely on the fact that the VE identified an additional job with a reasoning level of R1, namely housekeeping attendant, and that any error with respect to the R2 jobs was therefore harmless. *See* DOT # 323.687-014.

---

[6] Another distinction between the quoted limitation here and the above-cited caselaw is that the quoted limitation here concerns "commands" and "instructions," not tasks or duties. But that distinction can be disregarded for present purposes as it does not appear that this would impact the outcome.

Plaintiff contends that the housekeeping cleaner job was also precluded because the DOT job description conflicts with her limitation on public interaction.  This dovetails directly into the next issue regarding consistency between the VE's testimony (that someone with Plaintiff's RFC could perform the job of housekeeping cleaner), and the DOT's description of that job.

### B.   Consistency between DOT and VE's Testimony

#### 1.   Applicable Law

Pursuant to SSR 00-4p:

> Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.

> Neither the DOT nor the VE or VS evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information.

#### 2.   Analysis

The DOT description of housekeeping cleaner reads as follows:

> Cleans rooms and halls in commercial establishments, such as hotels, restaurants, clubs, beauty parlors, and dormitories, performing any combination of following duties: Sorts, counts, folds, marks, or carries linens. Makes beds. Replenishes supplies, such as drinking glasses and writing supplies. Checks wraps and *renders personal assistance to patrons*. Moves furniture, hangs drapes, and rolls carpets. Performs other duties as described under CLEANER (any industry) I Master Title.

> DOT # 323.687-014. (emphasis added).

Plaintiff contends the italicized job duty of "render personal assistance to patrons" is inconsistent with her RFC  which provides that she can have "minimal to no direct contact with

13

the public."

Defendant responds that there can be no conflict with the DOT because the DOT is silent on social interaction.  Resp. at 6 (citing *Dewey v. Colvin*, 650 Fed. App'x 512, 514 (9th Cir. 2016) (finding that because the DOT is silent on whether or not the jobs in question allow for a sit/stand option, there is no conflict)).  Defendant cites no controlling authority on point.  It is true that the DOT generally does not address social interaction as a distinct category of vocational considerations subject to categorization (as compared to exertional level, reasoning level, specific vocational preparation (SVP) level, each of which is categorized numerically or on a spectrum).  But that does not mean the DOT job description in question is silent on the issue.  Defendant cites no authority (controlling or otherwise) explaining how one ought to ascertain which subjects the DOT is or is not "silent" on.    If the ALJ had found Plaintiff was capable of *no* public interaction (not an uncommon restriction), and found that Plaintiff could nevertheless perform, for example, the job of retail cashier (DOT 211.462-014), it would be no defense for the commissioner to argue that the DOT is "silent" on the issue of public interaction.  Here, the language of the job description ("Render personal assistance to patrons") speaks fairly directly to the issue.

Defendant further argues that Plaintiff's layperson speculation as to the level of required public interaction in the housekeeping cleaner occupation cannot supplant the VE's vocational expertise on the matter, and Defendant underscores that the VE testified that his testimony was consistent with the DOT.   Stating that all of his testimony was generally consistent with the DOT is not tantamount to the VE testifying that housekeeping cleaner requires minimal public interaction notwithstanding the DOT description.   At the close of questioning the ALJ invariably asks the VE if his/her testimony is consistent with the DOT,  and the VE responds affirmatively. If that response alone was sufficient to refute the existence of a conflict, any appeal based on a DOT conflict would rendered meritless, and the reference in SSR 00-4p to the ALJ's obligation to

"elicit a reasonable explanation for the conflict" would be likewise.  In the case of an apparent conflict between the VE's testimony and the language of the DOT, SSR 00-4p clearly requires the ALJ to conduct a more robust inquiry than simply inquiring of the VE at the close of questioning whether all of his previous testimony was consistent with the DOT.

Defendant also mentions in passing that Plaintiff's counsel had the opportunity to question the VE on the record about the conflict but failed to do so.  Defendant appears to be suggesting that Plaintiff's counsel waived the issue by not raising it at the hearing, but Defendant neither overtly takes that position nor provides legal authority to support the unstated assumption that this is a waivable issue.  The language of SSR 00-4p, as quoted above, suggests otherwise as it appears to place the burden on the ALJ (not claimant or her counsel) to identify the conflict and elicit a reasonable response from the VE regarding the same.

Finally, Defendant contends that "render personal assistance to patrons" is but one isolated phrase among a long list of job duties that do not require public interaction.  Indeed, there are roughly a dozen discrete tasks listed suggesting that rendering personal assistance to patrons is perhaps not an integral part of the job.  Then again, one could question why that job duty would be listed at all if it was not an integral part of the job.  The same argument could be made about each one of the other tasks listed, that each task is but one task among many.  In that sense, none of them are integral.  Yet each one was significant enough to be explicitly listed in the DOT description.

Moreover, as Plaintiff emphasizes, based on common sense experience some of the other tasks listed (making beds, replenishing supplies) at a minimum involve some incidental public interaction even if the interaction is limited to a knock at the door followed by a request for housekeeping to return later (though this would seemingly be limited to the hotel/motel context, whereas the job description states it could apply in other establishments as well).

Essentially, Defendant contends it is speculative for Plaintiff to argue that public interaction "would occur with greater frequency than allowed in the RFC." This begs an important question, as it is not entirely clear with what frequency public contact *was* allowed in the RFC. The first applicable statement was, "The claimant would require work which has *minimal to no* direct contact with the public." AR 24 (emphasis added). But the ALJ immediately followed that sentence with, "The claimant is generally able to interact with others, but mental health issues suggest she would function best in an environment where she has no more than *occasional* public contact . . ." *Id.* (emphasis added). Both of these descriptions were posed to the VE in succession in the ALJ's first hypothetical at the hearing. AR 87–88. The two descriptions purportedly came from Drs. Frye and Bradley, but only the second one is apparent in their opinions. AR 146, 164.

"Minimal to no" and "occasional" are not interchangeable descriptions. "Minimal to no" is an informal description, whereas "occasional" is a social security term of art with a specific meaning under the regulations, namely up to 1/3 of an 8-hour day.[7] SR 83-10. "Minimal to no" has no precise meaning, but does not connote to up to 1/3 of an 8-hour day. It connotes something more like very little or next to none.

The first formulation was presented more definitively, namely that the claimant *"would require* work which has minimal to no direct contact with the public." The statement concerning occasional public interaction was not stated as definitively. Rather, both the ALJ and the agency doctors stated the Plaintiff would "*function best* in an environment where she has no more than occasional public contact." Yet the RFC is not a statement of the work environment in which the claimant would "function best;" it is a statement of the most one can do despite one's limitations. 20 C.F.R. §§ 404.1545(a)(1). A disability determination at step five certainly does not hinge on

the availability of work in environments where the claimant would "function best."  Couching the discussion in those terms muddies the analysis.

Because the ALJ did not clearly articulate the parameters of the public interaction limitation, the Court cannot determine the presence or absence of an apparent conflict, and thus will not speculate as to how the issue might have been resolved had the ALJ offered more clarity. Here, the DOT description of "housekeeping cleaner" is sufficiently in tension with limitations on public interaction that, for the avoidance of doubt, the ALJ ought to elicit a reasonable explanation from the VE regardless of the precise parameters of the limitation.

In sum, the RFC had only two types of limitations: task complexity, and public interaction.  The relatively brief DOT description of housekeeping cleaner overtly lists "render assistance to patrons" as a required task.  This was not a hidden issue, and a quick comparison of the VE's descriptions of the available jobs is illustrative.  What asked about the availablity of jobs for a hypothetical individual with Plaintiff's RFC, the VE stated, "You honor, let's begin with small products assembler, which is consistent with the hypothetical, *with very minimal public contact if any at all.*"  AR 89 (emphasis added).  The VE then listed housekeeping cleaner and laundry worker as additional examples but with no description regarding the amount of public contact.

Therefore,  remand is appropriate for the ALJ to clarify the nature and extent of the public interaction limitation, to clearly pose that limitation to the VE in the form of a hypothetical, and to elicit a reasonable explanation from the VE about the conflict with the DOT description of housekeeping cleaner insofar as it explicitly references at least one discrete task requiring public interaction (rendering assistance to patrons), and references other tasks that seemingly would involve at least some incidental contact (such as making beds, replenishing supplies).

1
2

### C.   **Plaintiff's Testimony**

3

#### 1.   **Applicable Law**

4

A claimant's statements of pain or other symptoms are not conclusive evidence of a

5

physical or mental impairment or disability.  42 U.S.C. § 423(d)(5)(A); Soc. Sec. Rul. 16-3p.  An

6

ALJ performs a two-step analysis to determine whether a claimant's testimony regarding

7

subjective pain or symptoms is credible.  *See Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir.

8

2014); *Smolen*, 80 F.3d at 1281; S.S.R 16-3p at 3.  First, the claimant must produce objective

9

medical evidence of an impairment that could reasonably be expected to produce some degree of

10

the symptom or pain alleged.  *Garrison*, 759 F.3d at 1014; *Smolen*, 80 F.3d at 1281–82.  If the

11

claimant satisfies the first step and there is no evidence of malingering, the ALJ must "evaluate

12

the intensity and persistence of [the claimant's] symptoms to determine the extent to which the

13

symptoms limit an individual's ability to perform work-related activities."  S.S.R. 16-3p at 2.  An

14

ALJ's evaluation of a claimant's testimony must be supported by specific, clear and convincing

15

reasons.  *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014); *see also* S.S.R. 16-3p at *10.

16

#### B.   **Analysis**

17
18

The ALJ found there was objective medical evidence of impairments which could be

19

expected to cause some degree of symptoms, and the ALJ found no malingering.  AR 25.  Thus,

20

the ALJ was required to identify clear and convincing reasons for rejecting Plaintiff's testimony.

21

Plaintiff offers a one page generalized critique of the ALJ's reasoning which Plaintiff

22

contends consisted of nothing but a summary of medical evidence and no clear and convincing

23

reasons for rejecting her testimony.   However, Plaintiff offers no examples in the testimony

24

which she contends ought to have been accepted as true.  Earlier in the brief Plaintiff did offer a

25

summary of relevant testimony, which reads as follows:

26
27

Plaintiff testified that she lives with a roommate and occasionally her
grandchildren visit. Ar. 72, 78. She does do any other socialization or engage in

28

hobbies, but generally spends time at home watching television or reading. Ar. 72-73. She has a hard time staying focused on the television, is usually distracted and doing something else within five minutes of starting a TV show. Ar. 81-82. She goes out to eat about once monthly, but she does not get together or talk with any family or friends. Ar. 75. She has difficulty being around others in the public due to anxiety and she avoids large groups of people. Ar. 82.

She does some household chores including laundry and cleaning her own space, but her roommate does the grocery shopping. Ar. 77-78. She does not do other significant chores except dishes occasionally, and she cooks for herself in the microwave. Ar. 78-79. She sits down while she does dishes, and she has to take breaks due to pain. Ar. 79-80. Back pain is treated with injections and medications, and she takes hydrocodone three to four times daily for pain. Ar. 82-83. Medications reduce her pain from about an 8/10 to 3-4/10, but she has side effects of drowsiness. Ar. 83. She has back spasms and spasms in her legs that make her feel unsteady, and this occurs several times weekly. Ar. 84.

None of these statements in this summary, even if accepted as true, establish the existence of limitations more extensive than the ALJ incorporated into the RFC. Plaintiff's argument falls victim to the same critique she directs at the ALJ's decision: it offers no more than a summary of evidence and a generalized conclusion that the aforementioned testimony should have been accepted. Plaintiff's argument appears more boilerplate than insightful. Here, more is needed giving consideration (and explanation) as to how that commonly raised argument applies in the present set of facts. But no such explanation was provided. Identifying harmful error requires more than fighting the ALJ's ambiguity with additional ambiguity. *See Greenwood v. Fed. Aviation Admin.*, 28 F.3d 971, 977 (9th Cir. 1994) ("We will not manufacture arguments for an appellant, and a bare assertion does not preserve a claim, particularly when, as here, a host of other issues are presented for review") (citation omitted); *See Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) ("The burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.").

Despite the ALJ's finding that Plaintiff's testimony was not entirely consistent with the record, the ALJ did include restrictions at least partially in consideration of Plaintiff's alleged limitations, such as limited public contact in consideration of Plaintiff's testimony that she avoids

crowds. Plaintiff does not explain what additional limitations should have followed, and therefore she did not meet her burden with respect to her third claim of error. *See Juniel v. Saul*, No. 1:20-CV-0421 JLT, 2021 WL 2349878, at *7 (E.D. Cal. June 9, 2021) ("Plaintiff fails to show this limitation to which he testified—and the ALJ acknowledged remained in the treatment records—was not properly accounted for in his residual functional capacity, which indicated Plaintiff 'could not have public contact' and limited interaction with co-workers").

## VI.    Conclusion and Remand for Further Proceedings

The ALJ erred in failing to discuss the opinions of Drs. Caruso-Radin and Bradley who opined Plaintiff could carry out a "2-step command involving simple instructions," and further erred in subsequently finding that Plaintiff could perform two jobs with a reasoning level of R2. Remand is appropriate for the ALJ to: 1) take a position on whether she is rejecting or accepting the quoted limitation, and explain whether it is supported by and consistent with the record as a whole; 2) to proceed through the sequential process as necessary; and, 3) if the quoted limitation is accepted, to inquire of the VE whether any jobs exist in significant numbers in the national economy with a reasoning level not exceeding R1 and which is otherwise consistent with the RFC.

The ALJ further erred in concluding that Plaintiff could perform the job of housekeeping cleaner despite her limitations on public interaction. Remand is again appropriate for the ALJ to clearly articulate the parameters of Plaintiff's public interaction limitation,  and to question the VE about the conflict with the DOT description of housekeeping cleaner or any other job identified at step five which requires public interaction. *See Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("Generally when a court . . . reverses an administrative determination, the proper course, except in rare circumstances, is to remand to the agency for additional

investigation or explanation.").

**VII.**   <u>**Order**</u>

For the reasons stated above, the Court finds that substantial evidence and applicable law do not support the ALJ's conclusion that Plaintiff was not disabled.   Accordingly, Plaintiff's appeal from the administrative decision of the Commissioner of Social Security is granted.   The Clerk of Court is directed to enter judgment in favor Plaintiff Penny Tainter, and against Defendant Kilolo Kijakazi, acting Commissioner of Social Security.


IT IS SO ORDERED.

Dated:  __February 3, 2023__                       _____/s/ Gary S. Austin_
                                             UNITED STATES MAGISTRATE JUDGE